**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MYLENA ALRED and JERRY W. ALRED** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Civil Action No. _____** |
| **v.** | § | |
| | § | |
| **EUSTIS MORTGAGE CORPORATION** | § | |
| *Defendant.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, MYLENA ALRED and JERRY W. ALRED ("Alred" or "Plaintiffs") bring this action against EUSTIS MORTGAGE CORPORATION ("Eustis" or "Defendant"), and would show the Court as follows:

### PARTIES

1.      Plaintiffs are adult resident citizens of Colorado County, Texas. They may be served with process and pleadings through their attorney of record.

2.      Defendant, Eustis Mortgage Corporation is a Louisiana corporation. Its principal place of business, and domicile address under Louisiana law, is located at 798 S. Rampart St., New Orleans, Louisiana 70113. Eustis is authorized to conduct business in the State of Texas as a foreign entity. Its registered agent for service of process in Texas is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

### JURISDICTION & VENUE

3.      The Court has subject matter jurisdiction over this case based on 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      The Court has personal jurisdiction over the Defendant because (a) Defendant has been licensed to do business in Texas since 1991, (b) Defendant has been licensed by the Texas Department of Savings and Mortgage Lending to provide mortgage banking services in

Texas since 2014, (c) Defendant has been providing mortgage banking services in Texas since 2014, including during that period of time from a location in Stafford, Texas, (d) Defendant has entered into real estate leases in Texas in connection with its mortgage banking business in the Southern District of Texas, including a lease space in Stafford, Texas, and (e) Defendant entered into the employment agreement with Plaintiffs to provide mortgage banking services through Plaintiffs in the Southern District of Texas, and Plaintiffs provided such mortgage banking services for Defendant in the Southern District of Texas.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Southern District of Texas, Houston Division. More specifically, the work performed by Plaintiffs pursuant to the contract at issue in this suit was substantially performed in the Southern District in furtherance of Defendant's mortgage business in the Southern District, including from its office in Stafford, Texas. Alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to this Court's jurisdiction in this action as demonstrated in paragraph 3 above.

**FACTS**

6.      Plaintiffs operate a mortgage banking business. Mylena Alred has been in the mortgage banking business since 1982, and Jerry Alred has been in the business since 1994. In 2007 Plaintiffs, through their company, Classic Home Financial, Inc., registered "Finance Home America" as an assumed name with the Texas Secretary of State and the Harris County Clerk. From 2007 to 2015, Plaintiffs provided mortgage banking services in Texas and elsewhere under the assumed name "Finance Home America." Throughout this period Plaintiffs' business was successful and growing. Over the course of their careers Plaintiffs had accumulated a large and stable group of customers that referred or generated business for Plaintiffs. These customers included especially real estate brokers and agents.

7.     In 2015, Plaintiffs were approached by Defendant about the possibility of joining forces to provide mortgage banking services under the umbrella of Eustis. Plaintiffs had known the principals of Eustis for many years and believed that joining Eustis would be beneficial both to them personally and to their customers. Beginning in 2015, Plaintiffs joined their business to Eustis on an informal basis. To formalize the relationship that already existed, Plaintiffs entered into an employment agreement with Eustis, effective January 1, 2017 (the "Employment Agreement"). In the Employment Agreement Plaintiffs are referred to variously as "Employee" or "Manager" or "FHA."

8.     Among other things, under the Employment Agreement, Plaintiffs were to be responsible for day-to-day operations of the Eustis Mortgage Division that would be operated under the assumed name of Finance Home America. Notwithstanding the continued use of the name Finance Home America under the umbrella of Eustis, the Employment Agreement repeatedly made very clear that the name "Finance Home America" was and would continue to be the sole property of Plaintiffs:

| | |
|---|---|
| Sec. I.B.xviii): | Company acknowledges that Finance Home America is the sole property of Manager's [sic] and will be widely used in the business contemplated herein as a DBA. |
| Sec. IV.E: | It is hereby acknowledged by both parties that the name Finance Home America is the property of Jerry and Mylena Alred. If their employment with EMC should end for any reason all rights to said name revert to them unconditionally. |
| Sec. IV.G: | Because of the unique nature of this employment agreement, EMC acknowledges that employees and customers are the property· of Finance Home America; fixed assets owned by FHA are recognized as their property and maybe moved by FHA. |
| Sec. IV.H: | It is understood that in the event of a sale of EMC, it is agreed that Finance Home America is owned explicitly by Jerry and Mylena Alred and they shall have the right to retain this channel and name and will not be party to such sale unless expressly agreed to in writing by both parties prior to the sale. |

9.     Section II of the Employment Agreement provided for the compensation of the

Plaintiffs. In addition to a salary, Plaintiffs were to receive 50% of net pretax profit from the operations of Finance Home America, to be distributed no later than 30 days following the end of each quarter.

10.     Section II.F. also provided for the establishment of a loan loss reserve:

> Both parties agree that an appropriate loan loss reserve will be established and charged as an expense item to FHA's P&L on a monthly basis. The parties further agree to evaluate the adequacy of such reserve on a bi-annual basis. If it is determined that the reserve is excessive or insufficient based on historical or expected losses (as determined by EMC), an appropriate adjustment will be made. Any excess: will be reclassified as income and treated appropriately. If insufficient, and agreed to by both parties, an adjustment to the loan loss accrual will be made until an appropriate reserve is established.

Throughout the course of their employment by Defendant, Plaintiffs funded their portion of the loan loss reserve. Under this provision, Plaintiffs are entitled to receive any excess reserve as additional income. Plaintiffs believe that the current excess reserve totals between $230,000 and $250,000. Plaintiffs are entitled to be paid this amount of excess reserve.

11.     Section V of the Employment Agreement established a fiduciary relationship between Eustis and the Plaintiffs. In Section V, Eustis acknowledged that it would "occupy a position of trust and confidence" in relation to the Plaintiffs. Eustis' formal fiduciary relationship imposed upon Eustis fiduciary duties to Plaintiffs, including without limitation, the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair, honest dealing, and the duty of full disclosure.

12.     Section V of the Employment Agreement also prohibits Eustis from keeping or using Plaintiffs' confidential information after the termination of the Employment Agreement. Eustis has breached this obligation by, among other things, keeping the documents and other confidential information about Plaintiffs' customers, leads, and referral sources, and using that information to continue to service Plaintiffs' customers and referral sources (including

especially Plaintiffs' wholesale customers) after Eustis terminated the Employment Agreement.

13.     Under Section IV of the Employment Agreement, each party could terminate the Employment Agreement by giving the other party 120 days' notice of intent to terminate. Once notice of intent to terminate was given, the parties each had certain rights and obligations during that 120 day period before which the termination would take effect. These included:

> Section IV.F  - It is understood that both parties may mutually agree to termination this employment agreement with proper notice. Under such circumstance, both EMC and FHA agree to immediately enter into discussions as to how to unwind the existing business relationship without causing undue harm to either business, customers or employees.
>
> Section IV.I   - Nothing herein is, or should be, considered a contract of employment for a fixed term. Each party to this agreement understands and agrees that either party may terminate this agreement provided they give a four ( 4) month written notice. During such notice period, both parties are expected to continue operations so as not to cause either party harm.

Under these subsections Defendant had the obligation to cooperate with Plaintiffs in unwinding their businesses in such a manner as to avoid harm to either party. The desire of the parties to avoid harm was evidently so strong that they mentioned the avoidance of harm twice – in both Section IV.F and IV.I. Defendant failed to give Plaintiffs the required 120-day notice of intent to terminate the Employment Agreement and acted in such a manner as to cause injury to Plaintiffs' business.

14.     On December 2, 2022, Kate DeKay, President of Eustis, called Mylena and Jerry Alred and advised them that the Employment Agreement (i.e., Plaintiffs' employment by Eustis) was terminated immediately. Ms. DeKay followed up that telephone call with written confirmation of the termination by email and by regular mail. Eustis' notice of immediate termination was a direct violation of the 120-day notice requirement in the Employment Agreement. In addition, precipitously terminating Plaintiffs' employment affected their ability to effectively unwind their relationship with Eustis without causing harm to Plaintiffs'

business, customers, and employees – as was expressly intended by the parties in the Employment Agreement. The 120-day notice was to allow Plaintiffs to be involved in the ongoing operations of the business, while they reactivated Finance Home America LLC as a separate entity. Among other things, Eustis cut Plaintiffs off from all emails, which were actually under a domain name owned by Plaintiffs.

15.     Eustis' failure or refusal to provide 120-days' notice and to cooperate with Plaintiffs in unwinding the businesses crippled Plaintiffs' ability to seamlessly transfer its customers from Eustis to FHA. In Section IV.G of the Employment Agreement Eustis acknowledged that the customers were the property of Plaintiffs, as between Plaintiffs and Eustis. Among other things, the 120-day notice period was intended to allow Plaintiffs time to re-establish the platform necessary to service the customers that, by Eustis' own acknowledgment, belong to Plaintiffs. Eustis did not provide Plaintiffs that opportunity. Instead, they have continued to service Plaintiffs' customers, especially Plaintiffs' wholesale customers. Eustis' goal, apparently, was to cut Plaintiffs out of the business, thereby adding millions of dollars of value to Eustis' business. And so far, Eustis has succeeded in this effort. Plaintiffs' largest wholesale customers continue to provide business to Eustis; business that rightfully belongs to Plaintiffs.

16.     Before Eustis' unexpected immediate termination of Plaintiffs, Defendant was undertaking certain staffing and other business decisions that would have a direct effect on Plaintiffs' ability to continue to operate their business after the termination of the Employment Agreement. Eustis' unlawful termination of the Employment Agreement cut Plaintiffs out of that process, thereby harming Plaintiffs future and continuing business prospects. Likewise, Eustis' abrupt and unauthorized termination directly affected the health benefits of Jerry Alred under the Eustis benefit plan.

17.     Defendant did not stop with abruptly terminating the Employment Agreement

and ignoring its obligation to cooperate in the transition of the business without harm to Plaintiffs. Defendant took active steps to harm the business of Plaintiffs. On December 12, 2022, a representative sent a blast email to many, if not all, of Finance Home America's customers, many of whom are real estate brokers and professionals, with the subject line "We've Evolved!" In the body of the email was the following graphic:



The obvious import of this announcement and the way it is phrased gives the impression that Finance Home America has gone away and only Eustis remains. At the same time, Eustis refused to give Plaintiffs access to their Finance Home America domain name (and attendant email), thereby taking from Plaintiffs their ability to contact their customers as Finance Home America to maintain the customer relationship. The clear intent of this announcement and Eustis' related actions was to steal Finance Home America's customers.

18.    At a minimum the announcement would be reasonably expected to cause

confusion – and it did! Numerous customers of Plaintiffs wrote or called asking about the meaning of the announcement. All of them were concerned that Plaintiffs and their team were no longer going to be providing mortgage banking services. Although Plaintiffs were contacted by several longstanding customers, most customers did not contact them.

19.     Having cut off Plaintiffs' ability to service their customers by failing to provide 120-days' notice of termination and refusing to cooperate with Plaintiffs in the orderly transfer of Plaintiffs' business to a new platform for Plaintiffs, Eustis has worked diligently to take the business of Plaintiffs' customers, especially Plaintiffs' wholesale customers. Eustis is likely cementing its relationship with Plaintiffs' wholesale customers by offering favorable terms. Eustis' actions are a deliberate attempt to cut Plaintiffs out and steal their business.

## COUNT ONE – BREACH OF CONTRACT

20.     The Employment Agreement is a valid and enforceable contract between Plaintiffs and Defendant. Defendant breached the Employment Agreement by, among other things, (a) terminating the Employment Agreement without giving the required 120-day notice (b) not cooperating with Plaintiffs to unwind the business relationship, (c) failing to continue operations so as not to cause Plaintiffs harm, (d) failing to reconcile the loan reserve and distribute to Plaintiffs the excess amount, (e) keeping and using Plaintiffs' confidential information following termination of Plaintiffs' employment, and (f) communicating with Plaintiffs' customers in such a manner as to harm Plaintiffs' present and future business prospects. Defendant's multiple breaches of the Employment Agreement have caused Plaintiffs to suffer damages in excess of $75,000, including without limitation Plaintiffs' portion of the excess reserve balance and the value of Plaintiffs' business that Eustis has stolen or otherwise destroyed by breaching the Employment Agreement, for which Plaintiffs now seek recovery.

## COUNT TWO – TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS

21.     Defendant has unlawfully interfered with Plaintiffs' existing and prospective

customer relationships. For example, on December 12, 2022, Defendant sent its "We've Evolved!" communication to many if not all of Plaintiffs' customers. These customers included real estate brokers and others that had, in the past, sent referral business to Plaintiffs and were very likely to continue to send business to Plaintiffs. Defendant had no right under the Employment Agreement or any law to send its "We've Evolved!" announcement. Defendant sent that announcement knowing that it would interfere with Plaintiffs' relationship with their customers. In fact, the communication could have been only for the purpose of interfering with Plaintiffs' relationships with their customers and to steal those customers. Since Defendant sent its unlawful communication, many of Plaintiffs' customers have not referred any business to Plaintiffs.

22.     In addition, Eustis has tortiously interfered with Plaintiffs' existing relationships with their wholesale customers. By its unlawful actions, Eustis has made it impossible for Plaintiffs to service their wholesale customers. Having intentionally cut out Plaintiffs, Eustis has appropriated that wholesale business for itself.

23.     Defendant's intentional acts have caused Plaintiffs to suffer damages in excess of $75,000, including without limitation lost income and the value of Plaintiffs' business that Eustis has stolen or otherwise destroyed, for which Plaintiffs now seek recovery.

## COUNT THREE – BREACH OF FIDUCIARY DUTY

24.     Eustis was a fiduciary of Plaintiffs. As such, Eustis owed Plaintiffs fiduciary duties, including without limitation, the duty of loyalty and utmost good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with integrity of the strictest kind, the duty of fair, honest dealing, and the duty of full disclosure. Eustis has breached these duties by, among other things, (1) failing to reconcile the loan reserve and distribute to Plaintiffs the excess amount (2) keeping and using Plaintiffs' confidential information following termination of Plaintiffs' employment, (3) failing to timely provide financial statements and other

documentation of financial results, and (4) failing to provide actual purchase advices from the investor in connection with hedging. Eustis' breach of its fiduciary duties has both proximately caused injury to Plaintiffs, including without limitation, lost income and the value of Plaintiffs' business that Eustis has stolen or otherwise destroyed. Eustis' breach of its fiduciary duty has also benefited Eustis by, among other things, accruing revenue from the customers of Plaintiffs that Eustis has stolen and by the increase in the enterprise value of Eustis that has resulted.

### COUNT FOUR – THEFT OR MISAPPROPRIATION OF TRADE SECRETS

25.     Eustis has violated the Theft of Trade Secrets Act ("TTSA"). U.S.C.A. § 1832. The confidential information of Plaintiffs that Eustis kept (and is using) after terminating the Employment Agreement includes documents and other information about Plaintiffs' leads, referral sources, and customers. This information is a trade secret under the TTSA because it relates to a service used in interstate commerce. Specifically, but without limitation, the trade secrets were used to service customers in Louisiana from offices and locations in Texas. Eustis is using Plaintiffs' trade secrets for Eustis' economic benefit and not for the economic benefit of Plaintiffs. Eustis knew that its actions would harm Plaintiffs when Eustis knowingly appropriated Plaintiffs' trade secrets without Plaintiffs' authorization. Eustis' knowing misappropriation has caused injury to Plaintiffs.

26.     Eustis has also violated the Texas Theft Liability Act ("TTLA"). V.T.C.A., Civil Practice & Remedies Code § 134.001 *et seq*. The confidential information of Plaintiffs that Eustis kept (and is using) after terminating the Employment Agreement includes documents and other information about Plaintiffs' leads, referral sources, and customers. This information is a trade secret under the TTLA because it is a secret that is not generally available to the public, and that gives Plaintiffs an advantage over competitors that do not know of or use the trade secret information. Eustis misappropriated Plaintiffs' trade secret information by retaining it after termination of the Employment Agreement and using it to, among other things,

continue to service Plaintiffs' customers (especially their wholesale customers) after cutting Plaintiffs out of the relationship. Eustis' misappropriation has caused injury to Plaintiffs.

27.    Eustis has also misappropriated Plaintiffs' trade secrets under the common law of Texas. Plaintiffs owned the trade secrets described above. The Employment Agreement obligates Eustis not to keep or use those trade secrets after Eustis terminated the Employment Agreement. Yet, in violation of that obligation, Eustis has continued to keep and use Plaintiffs' trade secrets, causing injury to Plaintiffs.

28.    Plaintiffs seek recovery of all damages caused by Eustis' theft or misappropriation of Plaintiffs' trade secrets.

## COUNT FIVE - CONVERSION

29.    Section V.A of the Employment Agreement provides that

> all documents, files, electronic records or data, or records or materials of any sort pertaining to each entities business, whether prepared by Employee or otherwise coming into Employee's possession or control, are the sole and exclusive property of each entity and that neither has any right to keep or use such documents or things following termination of his/her employment.

Thus, documents, files, electronic records or data, or records or materials pertaining to Plaintiffs' customers, especially Plaintiffs' wholesale customers,  are the personal property of and belong to Plaintiffs. Eustis is not permitted to use that personal property of Plaintiffs after the termination of the Employment Agreement. Yet, Eustis has wrongfully assumed and exercised dominion over that personal property of Plaintiffs and is using it to steal Plaintiffs' customers, especially Plaintiffs' wholesale customers. Plaintiffs have suffered damages as a result of Eustis' conversion, for which Plaintiffs now seek recovery.

## COUNT SIX – ATTORNEYS' FEES

30.    Plaintiffs, directly or through their legal counsel, made written demand upon Defendant that Defendant pay Plaintiffs the amounts owed to Plaintiffs. But Defendant has refused to pay the amounts it owes. Consequently, Plaintiffs have had to retain counsel to bring

this suit. Plaintiffs are entitled to recover, and now request, their reasonable and necessary attorneys' fees from Defendant pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.01 *et seq.* and Tex. Civ. Prac. & Rem. Code Ann. § 134A.005.

<strong>CONDITIONS PRECEDENT</strong>

31.     All conditions precedent to Plaintiffs' bringing this suit have been satisfied or otherwise waived by Defendant.

<strong>RELIEF REQUESTED</strong>

WHEREFORE, premises considered, Plaintiffs pray to recover from Defendant the following damages and other relief:

    a.  All actual damages suffered by Plaintiffs as a result of Defendant's breach of contract;

    b.  All actual damages suffered by Plaintiffs as a result of Defendant's tortious interference with Plaintiffs' existing and prospective business relationships;

    c.  All actual damages suffered by Plaintiffs as a result of Defendant's breach of fiduciary duty;

    d.  Disgorgement by Defendant of any profits that it made or benefit it derived from its breach of fiduciary duties;

    e.  The imposition of a constructive trust on proceeds, funds, and property obtained by Defendant as a result of its breach of fiduciary duty;

    f.  All actual damages suffered by Plaintiffs as a result of Defendant's theft or misappropriation of Plaintiffs' trade secrets or confidential information;

    g.  All actual damages suffered by Plaintiffs as a result of Defendant's conversion of Plaintiffs' trade secrets and confidential information;

    h.  Plaintiffs' reasonable and necessary attorneys' fees incurred in prosecuting Plaintiffs' claims;

    i.  An accounting;

    j.  All costs of court; and

    k.  Pre-judgment and post-judgment interest.

Plaintiffs pray for all other and further relief to which they may show themselves

entitled.

FERGUSON BRASWELL FRASER KUBASTA PC

*/s/ Kenneth H. Holt*
Kenneth H. Holt
S.D. ID No. 22589
Texas Bar No. 00793012
Joli A. Wright
S.D. ID No. 3622732
Texas Bar No. 24102667
3200 Southwest Freeway, Suite 3200
Houston, Texas 77027
Telephone: 713-403-4200
Facsimile: 713-403-4201
Email: kholt@fbfk.law
Email: jwright@fbfk.law

ATTORNEYS FOR PLAINTIFFS